IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-03170-RM-STV

**JANE DOE**;

    Plaintiff;

v.

**SCHOOL DISTRICT NUMBER 1, DENVER, COLORADO**, also known as Denver Public Schools ("DPS");

**DENVER PUBLIC SCHOOLS BOARD OF EDUCATION**;

**TOM BOASBERG**, individually, and in his official capacity as superintendent of DPS;

**ANDY MENDELSBERG**, individually, and in his official capacity as a principal with DPS;

**JANN PETERSON**, individually, and in her official capacity as an assistant principal with DPS;

**JEANETTE SCULLEY**, individually, and in her official capacity as a dean with DPS;

**ERIC SINCLAIR**, individually, and in his official capacity as a dean with DPS;

**ANITA CURTISS**, individually, and in her official capacity as a school psychologist with DPS;

    Defendants.

## DEFENDANT ANDY MENDELSBERG MOTION TO DISMISS

Defendant Andy Mendelsberg, by and through undersigned counsel, moves to dismiss Plaintiff's "First Amended Complaint" (Doc. 32) pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

### CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(a)

Undersigned counsel conferred with counsel for Plaintiff by email on April 18 and 19 regarding this motion, and the basis for seeking dismissal. Plaintiff opposes this motion. This Court's practice standards discourage dismissal motions where the defect of the pleading can be

1

corrected by amendment. Plaintiff has now twice amended her Complaint. Even with those amendments, Defendant believes the Complaint still fails to state a claim for relief.

## STANDARD OF REVIEW

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where, as here, a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts review the sufficiency of the complaint by presuming all alleged facts are true, construing them in a light favorable to plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). To survive a motion to dismiss with respect to federal claims a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions, a formulaic recitation of the elements, or naked assertions devoid of factual enhancement is not sufficient to survive a motion to dismiss. *Id.* In the context of multiparty Section 1983 litigation, the complaint must "make clear exactly *who* is alleged to have done *what* to *whom*." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (emphasis in original).

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a court does not determine the merits of a plaintiff's case but, instead, determines whether it lacks authority to adjudicate the matter. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Plaintiff bears the burden of establishing jurisdiction.

## RELEVANT ALLEGATIONS[1]

On March 14, 2016, Plaintiff reported to Jeannette Sculley, the dean of students, and Anita Curtiss, a school psychologist, that Plaintiff had been sexually assaulted by another East student ("Student 1") while at his home. (Doc. 32, ¶¶ 9-15.) Plaintiff and Student 1 were in the

---

[1] Mr. Mendelsberg accepts the allegations in Document 32 as true for purposes of this motion only.

same social circle. (*Id.* ¶ 11.) That day, Ms. Sculley and Ms. Curtiss met with Plaintiff's parents and informed them of the assault. (Doc. 32, ¶¶ 16-17.) Plaintiff's parents declined to press charges. (¶¶ 17-19.) Ms. Curtiss and Ms. Sculley encouraged Plaintiff to not communicate with Student 1. (*Id.* ¶ 15-19.) The following day, March 15, 2016, Ms. Sculley met with Plaintiff, who reported "facing backlash from peers" related to the assault. (*Id.* ¶ 27.) Ms. Sculley encouraged Plaintiff not to speak to other students about the alleged assault. (*Id.*)

On March 17, 2016, Plaintiff met with Ms. Curtiss to discuss "peer conflicts" related to the alleged assault and stated that she was struggling with the "fallout of her friendships" that week. (*Id.* ¶¶ 29-30.) That day, Ms. Curtiss spoke with Plaintiff's mother, who reported that Plaintiff had started seeing an outside therapist (*Id.* ¶ 31.) Plaintiff again met with Ms. Curtiss on March 21, 2016, during which Ms. Curtiss counseled Plaintiff on peer conflicts and encouraged her not to communicate with Student 1. (*Id.* ¶ 35, 37.) On March 23, 2016, Ms. Curtiss received information that Plaintiff "had started to cut herself." (*Id.* ¶ 40.) Ms. Curtiss met with Plaintiff immediately, filled out a safety plan for Plaintiff, and promised to continue counseling her. (*Id.*)

On April 6, 2016, Ms. Curtiss again met with Plaintiff to discuss ongoing peer conflicts and to discuss strategies to manage those conflicts. (Doc. 32, ¶ 41.) On April 8, Ms. Curtiss emailed Ms. Sculley to inform her that Plaintiff continued to report peer conflicts related to the alleged assault. (*Id.* ¶ 43.) That day, Ms. Curtiss again met with Plaintiff to counsel her on managing peer conflicts and later wrote in her counseling notes that Plaintiff had made "possible statements of self-harm" during the meeting. (*Id.* ¶ 44.) Following this meeting, Ms. Curtiss emailed Ms. Sculley requesting that she again warn Student 1 that he, and friends "defending him," cannot harass Plaintiff. (*Id.* ¶ 45.) Ms. Sculley agreed to do so. (*Id.*)

On April 13, 2016, Ms. Curtiss met with Plaintiff to discuss peer conflicts and reviewed expectations concerning her contact with Student 1, specifically that she should not communicate

3

with him and should not speak to others about him. (Doc. 32, ¶ 46.) Plaintiff asked during this meeting, "If I have an opportunity to speak with him, I shouldn't?" which Ms. Curtiss took to mean that Plaintiff continued to communicate with Student 1 and "things may continue as usual." (*Id.*) The following day, Ms. Curtiss completed a Suicide Risk Review for Plaintiff. (*Id.* ¶ 47.)

Between early September and late November 2016, there were "additional" reports that Plaintiff was experiencing bullying and peer conflicts, but it is not alleged who made these reports, to whom they were made, and if any Defendants were aware of the "additional" reports. (*Id.* ¶¶ 51-53.) In December 2016, Ms. Curtiss again met with Plaintiff, who told Ms. Curtiss that she was considering switching schools.

On January 19, 2017, Plaintiff and her sister made an anonymous Safe2Tell Report alleging bullying and blackmail by a student at East. (*Id.* ¶ 55.) A summary of this report reads:

> "Caller received information about a sophomore [name redacted] that has nude photos of female students on a phone app. The app is disguised as a calculator. [Name redacted] has used the photos to blackmail these students. Caller had nothing further to report."[2]

Notably, the report does not state who made the report, which "female students" are being blackmailed with "nude photos," how the student with the photos obtained them, or any other information that would link Plaintiff or Student 1 to the report, the photos, or any alleged blackmail. (*See* Safe2Tell Report, Attached as **Ex. A**, at 1.)

The following day, January 20, 2017, Eric Sinclair, a dean of students at East, and Jann Peterson, an assistant principal at East, met with Plaintiff, who informed them that she had made the Safe2Tell report, that she had been assaulted the prior school year, that other students were bullying her related to the assault, and that she had been "working with" Ms. Curtiss and Ms.

---

[2] Documents referenced in a complaint may be attached to a motion to dismiss without converting the motion into one for summary judgment. *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014).

4

Sculley on these issues. (Doc. 32, ¶ 57-59.) Mr. Sinclair and Ms. Peterson then contacted Plaintiff's parents, who came to the school and met with them and Plaintiff concerning the assault and ongoing bullying issues. (*Id.* ¶ 60.) Mr. Sinclair told Plaintiff's parents that Plaintiff would be "safe under his care." (*Id.*) Mr. Mendelsberg "came into this meeting to ask if [Plaintiff] was okay but then abruptly left." (*Id.*) There is no allegation that Mr. Mendelsberg knew the context of the meeting or knew Plaintiff or her parents at that time. (*See id.*)

Plaintiff also met with Mr. Sinclair later that day (January 20) about the bullying issues, and Mr. Sinclair discussed the issue with Ms. Curtiss a few days later. (*Id.* ¶ 60, 62.) On January 25, Mr. Sinclair met with Plaintiff and Elisa Spratt, a school psychologist, regarding bullying issues and specific students who were alleged to have been bullying Plaintiff since the assault. (*Id.* ¶ 63.) During this meeting, Plaintiff reported that she was having suicidal thoughts. (*Id.* ¶ 64.) In response to this report, the school immediately completed a suicide risk report for Plaintiff and noted in the report that the school would provide ongoing support for Plaintiff in the form of a "psychologist, social worker, nurse, or counselor." (*Id.* ¶ 64-68.)

The following day, Lindsay Visceri, a school counselor, met with Plaintiff and her father to discuss bullying concerns. (*Id.* ¶ 69.) Plaintiff formed "a close relationship" with Ms. Visceri. (*Id.* ¶ 72.) Plaintiff also met with Mr. Sinclair "several times" in January and February 2017 to discuss her bullying concerns. (Doc. 32, ¶ 71.) Mr. Sinclair also during this time frame met with Plaintiff's parents on at least one occasion to discuss bullying concerns. (*Id.*)

In mid-April 2017, Plaintiff told a teacher, Sarah Ramsay, that she had received unwelcome Snapchat messages from other students at the school. (*Id.* ¶ 73.) Ms. Ramsay reported this to Mr. Sinclair and to Joe Glover, another assistant principal at East. (*Id.* ¶¶ 73-76.) In late April, Plaintiff and her mother (by phone) met with Ms. Rasay, Ms. Visceri, and Vince Valdez, another dean of students at East, concerning Plaintiff's bullying concerns. (Doc. 32, ¶ 77.) After a

5

"lengthy discussion," the group created and signed a safety plan for Plaintiff. (*Id.*) Ms. Visceri and Mr. Valdez also met separately with Plaintiff's mother and sister. (Doc. 32, ¶ 79, 81-83.) Ms. Visceri later discussed with Plaintiff's parents the possibility of Plaintiff leaving East. (*Id.*)

On May 4, 2017, Plaintiff's parents met with Mr. Mendelsberg for two hours. (*Id.* ¶ 86-87.) The parents allegedly told Mr. Mendelsberg that Plaintiff had been sexually assaulted, had experienced ongoing bullying related to this assault, wanted to leave East, and wanted her grades "closed out," meaning Plaintiff would leave school and finish with the grades she had earned—to that point, all "A's"—with six weeks left in the semester (*Id.*) Mr. Mendelsberg explained at the outset that he did not know Plaintiff personally and, before this meeting, did not know about her alleged assault. (*Id.*) Mr. Mendelsberg and Plaintiff's parents agreed to an arrangement where Plaintiff would "finish out the school year at home" but that Plaintiff would come in before and after school to complete certain assignments. (*Id.* ¶¶ 88-89.) Mr. Mendelsberg did not agree to "close out" Plaintiff's grades out of fairness to other students and because Plaintiff would be continuing to engage in school, albeit at home, for six more weeks. (*Id.*) Plaintiff finished the semester successfully, earning a 4.0 Grade Point Average. (*Id.* ¶ 91.)

## ARGUMENT

Plaintiff asserts four claims against Mr. Mendelsberg: Claims Three, Four, and Five each arise under 42 U.S.C. § 1983 and allege Mr. Mendelsberg violated the Equal Protection Clause of the Fourteenth Amendment by engaging in a custom of discrimination and failing to train and supervise staff (Claim 3), creating a hostile environment amounting to sex-based discrimination (Claim 4), and being deliberately indifferent to allegations of harassment (Claim 5), while Claim Seven seeks declaratory and injunctive relief. Each of these claims fails to state a claim plausible on its face. Plaintiff fails to adequately allege Mr. Mendelsberg violated Plaintiff's clearly established constitutional rights; thus, he is entitled to qualified immunity on all claims. Further,

Plaintiff lacks standing to recover equitable relief because she has not alleged future injury.

**I.      Mr. Mendelsberg is entitled to qualified immunity.**

Qualified immunity protects government officials from civil liability if their conduct "does not violate clearly established statutory or constitutional rights . . . ." *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). The doctrine of qualified immunity protects government officials from liability unless a reasonable person, possessing the same facts, would have known that he or she was violating clearly established law. *Leverington v. City of Colo. Springs*, 643 F. 3d 719, 732 (10th Cir. 2011). In resolving a motion to dismiss based on qualified immunity, a court must consider whether the alleged facts make out a violation of a constitutional right, and whether that right was clearly established at the time of the alleged misconduct. *Id*. at 732.

**A.      Plaintiff has not plausibly alleged deliberate indifference.**

Section 1983 does not confer any substantive rights. *Gaines v. Stenberg*, 292 F.3d 1222, 1225 (10th Cir. 2002). Instead, it provides a mechanism to enforce federal rights. *Id.* Thus, claims under Section 1983 require an underlying constitutional violation,[3] presumably here the Equal Protection claims against Mr. Mendelsberg.

Mr. Mendelsberg was the supervisor of the other administrators. Under Section 1983, supervisors are not liable for their subordinates' conduct. *Iqbal*, 556 U.S. at 676. Instead, they may be held liable only when their **own** conduct violates federal law. *Id.* Thus, the complaint must allege Mr. Mendelsberg was aware of facts from which he could infer that Plaintiff was at substantial risk of constitutional harm, that he made that inference, but remained deliberately indifferent to it. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999).[4] To be

---

[3] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

[4] This includes claims alleging hostile environment and failure to train. *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999); *Porro v. Barnes*, 624 F.3d 1322, 1328-29 (10th Cir. 2010).

deliberately indifferent, Mr. Mendelsberg must have "consciously acquiesced" to conduct in a manner that was "clearly unreasonable." *id.*, and "intended the discrimination to occur." *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999). Deliberate indifference "is a difficult standard to meet," as it requires more "than negligence, or even gross negligence." *Barrie v. Grand Cnty., Utah*, 119 F.3d 862, 869 (10th Cir. 1997).

In addition, the complaint must allege facts showing an affirmative link between Mr. Mendelsberg's alleged indifference and the harm that befell Plaintiff. *Serna v. Colo. Dep't of Corr.*, 455 F.3d at 1146, 1154 (10th Cir. 2006).

### 1. The alleged facts, taken as true, fail to meet the threshold showing that Mr. Mendelsberg was deliberately indifferent to claims of harassment.

Plaintiff alleges only three events involving Mr. Mendelsberg: (1) his alleged receipt of the Safe2Tell report on January 19, 2017, (2) the meeting he briefly entered the following day, and (3) his meeting with Plaintiff's parents on May 4, 2017. The allegations related to these events, accepted as true, do not amount to deliberate indifference.

Plaintiff alleges Mr. Mendelsberg should have filed a "child abuse" report when he received the Safe2Tell report. (*Id.* ¶ 58.)[5] Failure to make a mandatory report alone does not amount to deliberate indifference. *Roe v. St. Louis Univ.*, 746 F.3d 874, 883 (8th Cir. 2014); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 388 (5th Cir. 2000).[6]

As to the meeting on January 20, 2017, Plaintiff alleges that Mr. Mendelsberg entered the meeting, asked if Plaintiff was okay, but then "abruptly left." (Doc. 32, ¶ 60.) Asking someone if they are okay is not indifference. Further, Mr. Mendelsberg's choice to only briefly attend the

---

[5] The Court can take judicial notice of a criminal court's dismissal of the failure to report charge against Mr. Mendelsberg. *See* Case Nos. 18M03955, 18M03956, 18M03958, 18M03959 (Denver. Cnty.) (J. Jackson).

[6] Plaintiff does not expressly allege Mr. Mendelsberg should have disciplined other students for harassment. However, if Plaintiff had alleged this, it would not create a cognizable claim, as she "does not have a right to specific remedial measures." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012).

meeting is not unreasonable: he could reasonably have assumed that two members of his senior staff, Mr. Sinclair and Ms. Peterson, could appropriately run the meeting and address Plaintiff's concerns. There is, in fact, no allegation that Mr. Mendelsberg caused Plaintiff any harm by leaving the meeting.

The May 4, 2017 meeting is when Plaintiff alleges her parents first informed Mr. Mendelsberg of the alleged bullying and harassment, over one year after she first reported it to a school counselor. (*Id.* ¶¶ 86-89.) While Plaintiff's parents requested that Mr. Mendelsberg "close out" Plaintiff's grades—meaning let her finish school with the grades she had already earned—they agreed to have Plaintiff "finish out the school year at home" but come in before and after school to complete certain assignments. (*Id.* ¶¶ 88-89.)

This arrangement, as alleged, is reasonable under the circumstances and did not result in any alleged harm, educational or otherwise. Plaintiff admits that she finished the semester with the perfect 4.0 Grade Point Average (*id.* ¶ 91) and does not allege that she experienced further harassment after this meeting. (*Id.* ¶¶ 89-126.) The allegation that Plaintiff and her parents may have preferred a different solution does not amount to deliberate indifference. *See, e.g.*, *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008) ("The fact that Ms. Rost rejected alternatives the district provided . . . does not reflect on the appropriateness of the district's responses . . . ."); *Deweese v. Bowling Green Indep. Sch. Dist.*, 709 Fed. App'x 775, 778 (6th Cir. 2017) (school's remedial plan for sexual assault victim was not clearly unreasonable even though not "preferred choice"); *Yap v. Oceanside Union Free Sch. Dist.*, 303 F. Supp. 2d 284, 295 (E.D.N.Y. 2004) (not deliberately indifferent for refusing to transfer student experiencing race-based harassment at school).

Plaintiff alleges Mr. Mendelsberg was not sufficiently familiar with Plaintiff or her allegations of harassment. (Doc. 32, ¶ 87.) The Safe2Tell report does not state who made the

report, which "female students" are being blackmailed, or any other information that would link Plaintiff to the report. (*Id.* ¶ 55; Ex. A.) There is no allegation that Mr. Mendelsberg knew the reason for the January 20, 2017 meeting or knew Plaintiff or her parents at that time. (*Id.* ¶ 60.) And there is no allegation that other administrators like Mr. Sinclair, Ms. Peterson, Ms. Sculley, or others shared Plaintiff's allegations of assault or harassment with Mr. Mendelsberg.

Even if Mr. Mendelsberg knew Plaintiff and acted negligently in response to her allegations—which the alleged facts do not show and would not amount to deliberate indifference—there is **no allegation** Mr. Mendelsberg "intended the discrimination to occur," which must be alleged to state a valid Equal Protection claim. *Gant*, 195 F.3d at 141.

At bottom, Mr. Mendelsberg is alleged to have received an anonymous report with no link to Plaintiff, upon seeing her and her parents in a meeting with two administrators the next day, asking if she was okay, and then four months later, meeting with Plaintiff's parents and granting their request to allow her to finish the semester at home, where she maintained straight "A's." These allegations, separately or collectively, do not show that Mr. Mendelsberg "consciously acquiesced" to harassment, that his responses were "clearly unreasonable," or that he "intended the discrimination to occur." *Murell*, 186 F.3d at 1250; *Gant*, 195 F.3d at 141.

### 2. The alleged facts, taken as true, do not show Mr. Mendelsberg failed to train or supervise staff in a deliberately indifferent manner.

Plaintiff also alleges that Mr. Mendelsberg violated her Equal Protection rights by failing to train staff regarding district policies and mandatory reporting laws and supervise them accordingly. (Doc., ¶ 158.) The alleged facts do not sufficiently support this claim.

To state a claim for failure to train or supervise, the complaint must set forth facts showing a "specific deficiency" that was "obvious" and "closely related" to the injury such that the failure to train amounts to deliberate indifference that caused the constitutional violation.

*Porro v. Barnes*, 624 F.3d 1322, 1328-29 (10th Cir. 2010).

As discussed, the alleged facts do not show that Mr. Mendelsberg was deliberately indifferent to allegations of harassment. The alleged facts also do not show that staff Mr. Mendelsberg supervised were deliberately indifferent. The allegations, rather, show that administrators at East attempted to address Plaintiff's concerns at every stage, including:

- Meeting with Plaintiff and her parents the day she reported the assault and asking her parents where they wanted to press charges, which they declined, and offering to help her fill out a police report. (Compl., ¶¶ 16-17.)

- Encouraging Plaintiff and Student 1 not to contact each other (*Id.* ¶¶ 15-19, 46.)

- Meeting with and counseling Plaintiff several times concerning peer conflict and alleged bullying and harassment by other students. (*Id.* ¶¶ 16-17, 27-30, 35, 37, 40, 41, 44, 46, 57-60, 63-64, 69-72, 77, 79, 81-83, 86-87.)

- Meeting with Plaintiff and her parents the day after she filed an anonymous Safe2Tell report. (*Id.* ¶ 57-60.)

- Creating two safety plans for Plaintiff. (*Id.* ¶ 40, 77.)

Viewed in a light most favorable to Plaintiff, the allegations show that staff attempted to remedy Plaintiff's concerns rather than "consciously acquiescing" to them. There is also no allegation, or reasonable inference, that staff "intended" discrimination against Plaintiff to continually occur. *Gant*, 195 F.3d at 141. Thus, staff were not deliberately indifferent to Plaintiff's concerns even if she continued to experience peer conflict and bullying at school. *See Yap*, 303 F. Supp. 2d at 295 (school's failure to prevent harassment did not amount to deliberate indifference where school attempted remedial measures).

Plaintiffs' claim relies on the allegation that the administrators did not report child abuse to local authorities and did not follow district policy regarding Title IX investigations. It is well-established, however, that failing to file mandatory reports does not amount to deliberate indifference. *See, e.g.*, *Roe*, 746 F.3d at 883; *Dallas Indep. Sch. Dist.*, 220 F.3d at 388. And

11

failing to follow relevant policies does not alone amount to deliberate indifference. *See, e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998) (district's failure to promulgate Title IX policies did not amount to deliberate indifference); *Porro*, 624 F.3d at 1328-29 (failure to follow policy banning use of tasers on detainees alone did not amount to deliberate indifference). The question, rather, is whether the response to allegations of harassment was "clearly unreasonable" and shows "purposeful" discrimination. *Murrell*, 186 F.3d at 1250-51; *Gant*, 195 F.3d 141. The alleged facts do not support that conclusion, and thus fail to plausibly allege deliberate indifference. At most, the failure to report or follow a district policy amounts to negligence, which, as noted, is not enough to state a claim for violation of the Equal Protection Clause. *Barrie*, 119 F.3d at 869.

Further, there is no allegation that a perceived lack of training at East to follow certain policies is so wide-spread and "obvious" that it amounts to deliberate indifference by Mr. Mendelsberg. Plaintiff alleges only that school staff failed to follow certain policies as to her, not that it was a school-wide problem. (Doc. 32, ¶ 157.) While Plaintiff highlights certain investigations into **district** conduct (*id.* ¶ 105-26), Plaintiff does not establish a link between those investigations and Mr. Mendelsberg or other staff at East. (*Id.* ¶ 123-26.) *See Zuchel v. City and Cnty. of Denver*, 997 F.2d 730, 734-35 (10th Cir. 1993) (there must a "direct causal link between the alleged constitutional deprivation and the inadequate training"). In fact, Plaintiff does not link the investigations into district conduct to her own alleged injury, aside from conclusory statements that "DPS's policy was the moving force behind" her injury. (*Id.* ¶ 159.) *See Iqbal*, 556 U.S. at 678 (courts need not accept as true "mere conclusory statements").

> **B.    There is no clearly established law that individuals like Mr. Mendelsberg are liable for (1) violating Title IX or (2) engaging in a "custom" of discrimination in violation of the Fourteenth Amendment.**

In Claim 3, Plaintiff alleges that Mr. Mendelsberg and other individuals are liable for

violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and for engaging in a "custom" of discrimination. (Doc. 32, ¶¶ 153-57.) There is no "clearly established" law sufficiently notifying Mr. Mendelsberg that individuals are liable for such claims. *See Perry v. Durborow*, 892 F.3d 1116, 1122-23 (10th Cir. 2018) (defining "clearly established law as "an on-point Supreme Court or Tenth Circuit decision").

Individuals are not liable for violating Title IX. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds, . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals, . . . ."). Thus, Plaintiff's Title IX claim against Mr. Mendelsberg is not plausible on its face.

Claims alleging a custom or practice of discrimination have been applied only to public entities, not individuals. *See, e.g.*, *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (analyzing when "municipalities" may be liable for constitutional deprivations); *Murrell*, 186 F.3d at 1249-50 (analyzing whether a school district may be liable for a custom of policy of discrimination, applying *Monell*); *Simmons v. Uinta Health Care Spec. Dist.*, 506 F.3d 1281, 1285-86 (10th Cir. 2007) (analyzing whether special services district can be liable for custom violating constitutional rights). Indeed, Plaintiffs' "custom" claim appears to track the language in *Murrell*, which as explained analyzes only whether a school district, as opposed to an individual administrator, is liable for a "sufficiently widespread and pervasive custom." (*Compare* Doc. 32, ¶¶ 151-57 *with Murrell*, 186 F.3d at 1249-50.)[7] Thus, there is no law clearly establishing that an individual can be held liable for a "sufficiently widespread and pervasive

---

[7] Even if there was law clearly establishing individual liability for municipal "customs" or "policies," there is no allegation showing that Mr. Mendelsberg is the "final policymaking authority" of such a district-wide policy. *See Murrell*, 186 F.3d at 1250 (concluding that complaint gave no indication that "either principal or teachers possessed final decision-making authority" over district-wide policy of discrimination).

custom" of discrimination; as a result, this aspect of Claim 3 also is not plausible on its face.

Given that the allegations against Mr. Mendelsberg fail to meet the legal standards necessary to state a claim under Section 1983 and Title IX, Plaintiff fails to overcome Mr. Mendelsberg's qualified immunity.

### II. Plaintiff lacks standing to recover equitable relief (Claim 7), and the allegations, accepted as true, do not plausibly state a claim for such relief.

In her seventh claim, Plaintiff seeks injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202. This claim fails for three reasons.

First, Plaintiff lacks standing to pursue her equitable claims, as she has not alleged a likelihood of future harm. *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) (court lacked jurisdiction over equitable claim where plaintiff did not allege future harm); *Burr v. Robinson*, 162 F.3d 1172, *1 (10th Cir. 1998) (unpublished) (same). Thus, the Court lacks jurisdiction over this claim and should dismiss the claim pursuant to Rule 12(b)(1).

Second, Plaintiff's claim for injunctive and declaratory relief is derivative of her claims alleging violation of the Equal Protection Clause. (Doc. 32, ¶¶ 208-09.) In fact, she seeks declaratory and injunctive relief under the same statute—Section 1983—that is the basis for her underlying claims. Because those underlying claims are not viable, there is no basis for injunctive or declaratory relief. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 242 (1st Cir. 2013) (dismissing "derivative" equitable claims after dismissal of underlying claims); *Gates v. Sprint Spectrum, L.P.*, 523 F. Supp. 2d 1287, 1291 (D. Kan. 2007) (dismissing "derivative" claim for injunctive relief given dismissal of underlying trespass claim).

Third, and relatedly, Plaintiff's claim for equitable relief is not plausible because it contradicts other allegations in the complaint. In her seventh claim, Plaintiff seeks a declaration that the district's policies, rules, and regulations related to Title IX are "unconstitutional and

void." (Doc. 32, ¶ 210.) Yet, she alleges in an earlier claim that the district's Title IX policies "likely meet[] Title IX muster." (*Id.* ¶ 154.) Those allegations, accepted as true, directly undermine the equitable relief Plaintiff seeks. *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[A] court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss"); *Baily-El v. Fed. Bureau of Prisons*, 246 Fed. App'x 105, 109 (9th Cir. 2007) (unpublished) (rejecting claim under Section 1983 where plaintiff asserted "contradictory allegations" regarding intent).

## CONCLUSION

Mr. Mendelsberg is entitled to qualified immunity against Plaintiff's third, fourth, fifth, and seventh claims; thus, those claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's seventh claim seeking equitable relief should also be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Dated this 22nd day of April 2019.

CAPLAN AND EARNEST, LLC

*s/ Elliott V. Hood*
M. Gwyneth Whalen
Elliott V. Hood
3107 Iris Avenue
Boulder, CO 80301
Phone: 303-443-8010
Fax:  303-440-3967
gwhalen@celaw.com
ehood@celaw.com

*Attorneys for Defendant,*
*Andy Mendelsberg*

## CERTIFICATE OF SERVICE

  I hereby certify that on April 22, 2019, a true and accurate copy of the foregoing document was served on opposing counsel via CM/ECF, the court's online filing system as follows:

Igor Raykin, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
E-mail: igor@coloradolawteam.com

                                          *s/ Kathi Donahue*
                                        Kathi Donahue, Paralegal